THURMAN *v.* MOORE.

Opinion delivered January 14, 1929.

*Robert A. Kitchen,* for appellant.

*Saxon, Wade & Warren,* for appellee.

McHANEY, J.  Title to the land covered by the oil and gas lease in controversy, southeast southwest 6-16-15, Union County, was involved in litigation on May 20, 1925, and was settled by this court in two cases, *Wilson v. Biles,* 171 Ark. 912, 287 S. W. 373, and *Clark* v. *Wilson,* 174 Ark. 669, 297 S. W. 1008.  Pending a final determination of this litigation, and on the date aforesaid, all the parties thereto, being all the claimants to said land, joined in the execution of an oil and gas lease thereof to appellant, M. B. Thurman, for a consideration of $40,000, $20,000 cash and $20,000 to be paid out of seven-sixteenths of the first oil produced from said land.  The lease further provided that the cash payment and all

future payments from a sale of the oil produced there-
from should be deposited in escrow and held by the First
National Bank of El Dorado for the benefit of the lessors,
subject to the final determination of their respective
rights in the litigation aforesaid. The lessors also exe-
cuted and delivered to said bank a separate escrow agree-
ment in accordance with said provision in the lease.
Thurman paid the $20,000 cash to the bank, and proceeded
to drill for oil, resulting in a very rich well. He sold the
oil therefrom to H. E. Clark *et al.*, doing business under
the name of Penn Liberty Oil Company, and to the Magna
Pipe Line Company, each of whom was furnished a copy
of the above-mentioned agreement. Thurman, the les-
see, and both purchasers of said oil, neglected or refused
to deposit the sums required by both the escrow agree-
ment and the lease with the bank in payment of the bal-
ance due on the purchase price of said lease, and on Octo-
ber 27, 1926, all the parties, lessor and lessee, together
with the escrow agent, joined in a suit to collect said
money. Both purchasers had credited the lessors with the
correct amount due them, but had not deposited same to
their credit in the bank. On the filing of the suit, the
Magna Pipe Line Company paid all the money due by it
to the bank, and the Penn Liberty Oil Company paid cer-
tain sums, which reduced the amount still owing on the
purchase price to $5,354.73. On March 26, 1926, appel-
lant Thurman assigned this lease to appellant Continental
Supply Company, by the terms of which the Continental
took subject to the payment of the $20,000 out of oil as
aforesaid. The appellees here intervened in the action
against Penn Liberty Oil Company, above mentioned,
in what they call an intervention over, by which they
sued Thurman and his assignee, the Continental Oil Com-
pany, for the balance due, in which they alleged that
appellants had taken more than sufficient oil from the
lease to pay said balance due thereon. The court decreed
judgment against both appellants and a foreclosure of a
purchase money lien for the sum of $5,354.73, which in-
cluded interest to the date of the decree.

We think the decree of the chancery court was correct. The balance found due by the decree was purchase money due by Thurman, the lessee, and he could not relieve himself from personal responsiblity by selling the oil to a purchaser who merely credits the amount due the lessors on his books, unless they agree to look to the purchaser therefor, or estop themselves by inconsistent conduct in some manner misleading the lessee to his injury. We find no such agreement in the record, and no conduct on which to base estoppel. True, they tried to get the Penn Liberty to pay into the depository the amount due, and joined with the lessee and escrow agent in a suit to compel them to pay, but by so doing they did not waive their right to require the lessee and his assignee to pay. They still have their action against the Penn Liberty Oil Company to recover the amount it is due and owing for such oil. The assignee simply stepped into the shoes of the lessee. He took his assignment subject to the payment of the purchase price out of the oil produced. This was a covenant running with the lease, and was not satisfied by the fact that sufficient oil had been run prior to the assignment to satisfy the claim, when, as a matter of fact, it had not been applied thereto. In such a case the assignee is liable. 1 Thornton on Oil, § 102.

Moreover, under the lease the lessee had full control of all the oil except the 1/8 royalty. He had plenary power to produce, sell or otherwise dispose of 14/16 of the oil and to collect for same, without consulting with the lessors. The lease did require him to deposit in said bank the proceeds of the sale of 7/16 of the oil until $20,000 was paid in full. "* * * and $20,000 to be paid out of 7/16 of the first oil and gas produced and saved from the lease hereinafter described. * * * It is further agreed that all payments under this lease shall be deposited in the First National Bank," etc. This duty of making such deposits rested on the lessee and his assignee, and not on the purchaser.

The decree is correct, and is affirmed.